William SPEARING and Trudy Spearing, his wife, Plaintiffs-Appellants,

v.

COUNTY OF BAYFIELD, Wisconsin, a political subdivision, Lawrence C. Young, Donald H. Jorgensen, Edward H. Rutledge, William T. Reed, Robert T. Germond, Deo W. Larson, Frank D. Romnes, W. Douglas Wills, Russell L. Parzych, Richard H. Hunter, Emil H. Meitzner, Paul L. Jones, Del R. Laughlin, George L. McLeod, Gene McDonald, Douglas L. Wilson, John Sieh, Reliance Construction Company, a Wisconsin corporation, and Commercial Union Insurance Company, a foreign insurance corporation, Capitol Indemnity Corporation, a domestic insurance corporation, Duffek Sand & Gravel, Inc., a domestic corporation, and Its Unknown Insurance Carrier, and Employers Mutual Liability Insurance Company of Wisconsin, a domestic insurance corporation, Defendants-Respondents,

NATIONAL IRON COMPANY, a division of Pettibone Corporation, a foreign corporation, Pettibone Corporation, a foreign corporation, and Pettibone International Sales Corporation, a foreign corporation, Plaintiffs-Appellants,

v.

COUNTY OF BAYFIELD, Wisconsin, a political subdivision, Lawrence C. Young, Donald H.

Jorgensen, Edward H. Rutledge, Dale D. Darwin, William T. Reed, Robert T. Germond, Gilbert O. Bennett, Deo W. Larson, Frank D. Romnes, W. Douglas Wills, Melvin M. Sarvela, Donald W. Bergman, Russell L. Parzych, Richard H. Hunter, Emil H. Meitzner, Paul L. Jones, Del R. Laughlin, George L. McLeod, Gene McDonald, Daniel J. Peterson, Donald L. Wilson, John R. Allen, Roger N. Breitzman, Jerome R. Olson, James Sieh, Employers Mutual Liability Insurance Company of Wisconsin, a domestic insurance corporation, Reliance Construction Company, a Wisconsin corporation, Guardian Insurance Company of Canada, a foreign insurance corporation, Commercial Union Insurance Company, a foreign insurance corporation, and Capitol Indemnity Corporation, a domestic insurance corporation, Defendants-Respondents,

Donald H. JORGENSON, Defendant and Third-Party Plaintiff-Respondent,

RELIANCE CONSTRUCTION COMPANY and Commercial Union Insurance Company, a foreign insurance corporation, Third-Party Defendants-Respondents,

COUNTY OF BAYFIELD, Wisconsin, and Lawrence C. Young, Defendants and Third-Party Plaintiffs-Respondents,

William SPEARING, Third-Party Defendant.

Court of Appeals

*No. 85-1291. Submitted on briefs April 9, 1986.—Decided August 12, 1986.*

(Also reported in 394 N.W.2d 761.)

166

For plaintiffs-appellants, National Iron Co., a division of Pettibone Corp., there were briefs by *Krueger & Krueger* of Rhinelander.

For plaintiffs-appellants, William & Trudy Spearing, there were briefs by *Wm. A. Schroeder* of Rhinelander.

For defendant-respondent, Dufek Sand & Gravel, there was a brief by *Joe Thrasher* of Rice Lake.

For respondent state employes there was a brief by *Bronson La Follette*, attorney general, and *Theodore L. Priebe*, assistant attorney general.

For defendant-respondents Reliance Construction Co. and Commercial Union Insurance Co., there was a brief by *Scott W. Clark*, of *Clark & Clark*, of Ashland.

For defendant-respondent, Guardian Insurance Co. of Canada, there was a brief by *Kenneth A. Knudson* of *Gee, Hendricks, Knudson & Gee,* of Superior.

For defendants-respondents, County of Bayfield and Lawrence C. Young, there was a brief by *James L. Bartells* of Merrill.

Before Cane, P.J., LaRocque and Myse, JJ.

LAROCQUE, J. William and Trudy Spearing and National Iron Company, an unincorporated division of Pettibone Corporation (Pettibone USA),[1] appeal the dismissal of their claims that arose out of a single-vehicle truck-crane accident on a state highway in Bayfield County. The trial court, applying collateral estoppel, barred the claims by virtue of a verdict and judgment in federal court. The Spearings and National Iron both assert lack of fair opportunity to fully pursue their claims in the federal court. National Iron also disputes the state court's decision to stack its negligence upon the negligence of a Canadian corporation, Pettibone of Canada, a wholly-owned subsidiary of Pettibone USA. National Iron further challenges the summary judgment of dismissal granted Guardian Insurance Company of Canada, the insurer of Spearing's defaulting corporate employer. We concur with the trial court's rulings and affirm.

These consolidated actions arose out of a 1981 accident on U.S. Highway 2 in Bayfield County. The front steering axle of a large truck-crane driven by William Spearing broke as it passed over a bump or frost heave in the road, and the vehicle veered off the highway and down a deep embankment. Spearing was injured and the

---

[1] Although National Iron is not a legal entity, it is identified separately consistent with the approach the parties used.

crane damaged. The vehicle consisted of a chassis manufactured by Pettibone of Canada and a crane made by National Iron of Duluth, Minnesota.

National Iron and its corporate owner, Pettibone USA, commenced an action in Bayfield County Circuit Court for damages to the crane naming various state officials, Bayfield County, and others as defendants[2] alleging defects in highway construction and maintenance. The Spearings, meanwhile, commenced a personal injury action in federal court against National Iron and Pettibone USA alleging strict liability for the defective manufacture of the front axle.

Several months before the Spearings' federal trial, the district court ruled that it would apply Canadian law to determine liability. Under the applicable law of the Province of Ontario, the Spearings were faced with the prospect of collecting only that portion of damages equal to the negligence attributed to each defendant. Under Wisconsin tort law involving multiple tortfeasors, on the other hand, they would have had the right to collect their entire damages, less the percentage attributable to their own contributory negligence, from any individual defendant whose negligence equaled or exceeded their own. *See Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Construction Corp.*, 96 Wis.2d 314, 326–30, 291 N.W.2d 825, 831–33 (1980).

The Spearings sought to remedy their dilemma by joining various parties as defendants in the federal action, adding the same theories of liability for highway defects National Iron asserted in its state action. The Spearings' motion was denied as not timely.

---

[2] William Spearing was named as third-party defendant in National Iron's action.

The Spearings next commenced a state action in Bayfield County naming the same additional defendants that it had unsuccessfully attempted to join in federal court and moved to consolidate its state action with the federal action. Again, the motion was denied as not timely. These various federal court rulings serve as the basis of the Spearings' claim in this court that they were denied a fair opportunity to try their lawsuit.

At trial, the federal jury apportioned causal negligence in this fashion:

| | |
|---|---|
| National Iron (a division of Pettibone USA) | 12% |
| Pettibone of Canada | 25% |
| Bayfield County | 12% |
| State of Wisconsin | 11% |
| Reliance Construction Company | 5% |
| William Spearing | 35% |
| TOTAL | 100% |

The state trial court, in reliance on the federal verdict and judgment and the principles of collateral estoppel as detailed in *Crowall v. Heritage Mutual Insurance Co.*, 118 Wis.2d 120, 125–26, 346 N.W.2d 327, 331 (Ct. App. 1984), and after attributing the negligence of Pettibone of Canada to National Iron, dismissed the pending state claims of both National Iron and the Spearings.

*Crowall* permits the party against whom the doctrine of collateral estoppel is asserted to avoid its application if that party did not have a "fair opportunity procedurally, substantively and evidentially" to pursue its claim in the first action. *Id.* at 126, 346 N.W.2d at

331. The Spearings concede that they knew from the outset that the issues of highway defects would be considered in the federal verdict. They argue, however, that because they anticipated the application of Wisconsin tort law of joint and several liability, they were not properly prepared to litigate the highway issues.

The Spearings' claim is foreclosed. First, their claim of procedural unfairness was remediable through the federal appellate process. Although they appealed to the Seventh Circuit, they did not pursue any claim of procedural unfairness there. Further, and apart from the lack of a federal appeal, the Spearings' approach to joinder and preparation for trial was a matter of deliberate tactics. They chose the forum, the issues, and the parties. They took a calculated risk that a federal jury was preferable to a Bayfield County jury. Their surprise at the federal court's decision to apply Canadian law is not the type of "unfairness" that justifies the time and expense of a retrial.

National Iron, on the other hand, disputes the application of collateral estoppel only as to Duffek Sand & Gravel, an issue addressed later in this opinion. National Iron's principal contention is that Pettibone of Canada's negligence cannot be stacked with its own to bar recovery. The effect of the state trial court ruling was to bar National Iron's claim because it was more negligent (12% plus Pettibone of Canada's 25% = 37%) than any other defendant, including Spearing.

While we disagree with the analysis suggested by the parties, we concur in the result. National Iron, draw-

ing on dictum[3] from the Seventh Circuit opinion in the Spearings' federal appeal, phrases the issue in terms of "piercing the corporate veil." This doctrine is traditionally used as an exception to the rule that a corporation is a separate "entity" or "person" where application of the corporate fiction would operate as a fraud or defeat some strong equitable claim. *Stebane Nash Co. v. Campbellsport Mutual Insurance Co.*, 27 Wis.2d 112, 121-22, 133 N.W.2d 737, 743-44 (1965); 1 W. Fletcher, Cyclopedia of The Law of Private Corporations, secs. 41-48 (1983). This case involves neither fraud nor a claim in equity.

We adopt the test set forth in Restatement (Second) of Torts, sec. 491 (1965). If parties engage in a joint enterprise, then the law considers each the agent or servant of the other, and the act of one within the scope of the enterprise is to be charged vicariously against the rest. Restatement (Second) of Torts, sec. 491(c), comment b (1965).

> The elements which are essential to a joint enterprise are commonly stated to be four: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

Restatement (Second) of Torts, sec. 491, comment c (1965).

---

[3] The United States Court of Appeals for the Seventh Circuit treated as waived any argument about Wisconsin law as it applied to stacking because it was not argued. *Spearing v. National Iron Co.*, 770 F.2d 87, 89 (7th Cir. 1985).

The agreement and common purpose in this case, implied if not express, was to join forces to build the truck-crane; the crane in Canada, the chassis in the United States. The necessary community of pecuniary interest is undisputed.

The uncontroverted evidence of joint control established that the two parties, Pettibone USA and Pettibone of Canada, in marketing the crane, acted as one. The advertising brochure for the crane features "Single Company Accountability For Krane And Carrier." The general manager of National Iron Company testified without contradiction that Pettibone USA wanted the public to understand that there was this single accountability; that Pettibone is a multi-national company ready to stand behind its product. Pettibone of Canada's chief engineer testified that engineering decisions passed from the Chicago office of Pettibone USA to the president of Pettibone of Canada.

National Iron next claims a right to judgment on the issues of liability and damages against Guardian by application of the doctrine of res judicata and based upon the following logic:

(A) Both Cranes and Services, Inc., Spearing's corporate employer, and its insurer, Guardian, were named as defendants in National Iron's state action.

(B) Cranes made no appearance and defaulted; Guardian appeared only for itself and denied coverage.

(C) The legal aphorism "the insurer who declines to defend does so at his peril," *Grieb v. Citizens Casualty Co.*, 33 Wis.2d 552, 558, 148 N.W.2d 103, 106 (1967), is

applicable, and Cranes' failure to answer is attributable to Guardian.[4]

(D) Since the default attributable to Guardian occurred prior to the federal trial, that default judgment must be recognized rather than the federal judgment on the same issues.

We conclude that the flaw in National Iron's logic occurs when, under the facts of this case, it vicariously attributes Cranes' failure to answer to Cranes' insurer, Guardian. Although as a general rule insurers may be held accountable when judgment is rendered against its insured, judicial economy must occasionally yield to countervailing considerations including fundamental fairness. *See McFadden v. McFadden*, 396 P.2d 202, 204 (Ore. 1964). Here, it has not been established that Guardian's denial of coverage is frivolous or unfounded. Further, given the fact that coverage was contested, we are not prepared to hold that a defendant has no duty whatever to defend where the insurer denies coverage. *See Buckner v. General Casualty Co.*, 207 Wis. 303, 312, 241 N.W. 342, 345 (1932). Finally, no prejudice resulted to National Iron by virtue of the trial court's ruling since it was required to participate and defend in the federal action regardless of its default judgment against Cranes.

We also agree with the trial court's conclusion that National Iron is collaterally estopped from litigating the issue of Duffek Sand & Gravel's liability. Although Duffek was not a party to the federal suit, its acts were attributed at trial to the Reliance Construction Com-

---

[4] National Iron concedes that the coverage issue remains to be tried and in fact stipulated to try the matter in an Ontario court, assuming the result of this case necessitated it.

pany based upon the mistaken belief that Duffek was a subcontractor and not an independent contractor. When the jury found Reliance five percent negligent, it had before it all of the activities Duffek performed and attributed them to Reliance. The *Crowall* rule thus applies here as well.

*By the Court.*—Judgment affirmed.