Walter W. DONALD, Kathryn A. Donald, individually and as the natural parents and general guardians of Dana D. Donald, Dawn Donald, Darcey Donald, Dustin Donald, Cody Donald, Clint Donald and Travis Donald, minor children, Julia Donald Huele, and Lori Donald Johnson, Plaintiffs,

v.

POLK COUNTY, Polk County Department of Social Services, Nancy L. Stewart, individually and in her official capacity as Social Worker for the Polk County Department of Social Services, Richard L. Kammerud, individually and in his official capacity as Director of Polk County Department of Social Services, Calvin G. Schladweiler, individually and in his official capacity as Social Work Supervisor of the Polk County Department of Social Services, Constance L. Usiak, individually and in her official capacity as Social Work Supervisor of Polk County Department of Social Services, Delores Mosay, individually and in her official capacity as Social Worker for Polk County Department of Social Services, Polk County Sheriff's Department, Ken Madsen, individually and in his official capacity as former Sheriff of Polk County, and Paul Lindholm, individually and in his official capacity as Sheriff of Polk County, Defendants.

No. 86–C–15–S.

United States District Court, W.D. Wisconsin.

Dec. 18, 1986.

David E. Lasker, Buffett, Dew, Blaney, Olson & Lasker, Madison, Wis., for plaintiffs.

Barbara E. Cohen, Boardman, Suhr, Curry & Fiel, John M. Moore, Bell, Metzner & Gierhart, Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court is the motion for summary judgment filed by the defendants. This case, brought by a minor who was removed from her home after an alleged incident of child abuse, her parents and her siblings, attacks the removal on a number of procedural and substantive grounds. The complaint is grounded on 42 U.S.C. § 1983, and jurisdiction is properly asserted under 28 U.S.C. § 1343.

### FACTS

Plaintiffs Walter and Kathryn Donald are residents of Polk County, Wisconsin, and are the parents of nine children, including Dana Donald, who are also plaintiffs in this case. At the time Dana was first removed from the custody of her parents, on January 14, 1983, she was 10 years old, was afflicted with epilepsy, attended a school for the emotionally disturbed and had a mental age of less than four years old.

Defendant Polk County is a political subdivision of the State of Wisconsin, and the County's Department of Social Services and Sheriff's Department are agencies of the County. Defendants Stewart, Kammerud, Schladweiler, Usiak and Mosay were, at material times, employed in the Department of Social Services. Defendants Madsen and Lindholm were at material times

Sheriff of Polk County during their respective terms.

On January 13, 1983, the Department of Social Services received a complaint indicating that Dana Donald may have been the victim of physical abuse. There had been several previous contacts between the Department and the Donald family concerning injuries to Dana. However, none of these resulted in Dana's removal or the institution of any formal proceedings.

On January 14, 1984, defendant Stewart, a dispositional worker for the Department, interviewed Dana at school concerning the cause of the two sores on her back. After this interview and after consulting with an intake worker and her superiors, Stewart removed Dana from school, had her examined by a physician, and placed her in foster care. This action was supported by the filing of a "Temporary Physical Custody Request" which asserted that the requirements of § 48.205, Wis.Stat. were met because the child "would be subject to injury by others."

Under § 48.21, Wis.Stat. a child who is taken into custody and not released must be the subject of a hearing before a judge or juvenile court commissioner within 24 hours (excluding Saturdays, Sundays and holidays). Prior to the hearing, there must be filed a petition that the child is in need of protection and services, and the petition must be supported by "reliable and credible information which forms the basis of the allegations necessary to invoke the jurisdiction of the court, together with a statement that the child is in need of supervision, services, care or rehabilitation." Wis.Stat. § 48.255. Defendant Stewart was the petitioner in this case and stated on information and belief that Dana had received two circular wounds on her back, that a physician had stated that they were burn marks, that Dana's explanation as to the cause of the wounds (that she had been pushed down) was not consistent with the nature of the wounds according to the examining physician, and that Dana had a number of circular scars on her hands and feet. She also related, in short, the kinds of injuries to Dana that had been the subject of previous contacts between the family and the Department.

A hearing was held on January 17, 1983 regarding this petition (which was timely, since January 14 was a Friday). Dana's parents, their counsel, and a guardian ad litem for Dana all were present and participated in the hearing. The circuit judge, at the conclusion of the hearing, determined that probable cause existed to continue to hold Dana, and he so ordered.

A fact-finding hearing to determine if the allegations in a petition are proved must be held pursuant to §§ 48.305 and 48.31, Wis. Stats, within 30 days of a request of the parent. Such a request was apparently made, and the parents of Dana apparently exercised their option to receive a jury trial. Such a hearing was held on February 11, 1983, and the jury returned a verdict that Dana was the victim of an injury inflicted by another by other than accidental means. At a dispostional hearing held on March 9, 1983, the Circuit Court ordered foster home placement for Dana and fairly extensive examination and treatment of the family, and the release of various pieces of information by the parents.

This disposition, with some changes over time, was largely continued until 1986, after yearly reviews by Circuit Court judges based upon the recommendations and petitions of defendants.

## MEMORANDUM

The above enumerated facts are, in the Court's view, undisputed. The proposed facts filed by the defendants and the plaintiffs' response to those facts present conflicts going largely to the adequacy of the defendants' investigations, the good faith of the defendants with respect to the content of the petitions and testimony offered in the proceedings which took place, and the truthfulness of the defendants' assertions that they acted at all times in accordance with their professional judgment. Generally, plaintiffs assert that the contents of defendants' written filings and testimony were based on misrepresentation, inadequate or nonexistent investigation,

withholding of contrary facts, and, perhaps, fabrication. As nonmoving parties, the plaintiffs are entitled to have disputed facts resolved in their favor on a motion for summary judgment, so the Court will assume, for purposes of this motion, that defendants have acted in bad faith throughout the process with one exception. That exception is that defendant Stewart acted initially with respect to the removal of Dana in response to information from authorities at Dana's school that Dana had two sores on her back. This fact is undisputed. The source of this injury and the adequacy and good faith of defendant Stewart's response to the information is hotly contested.

Plaintiffs also contend that the actions of the defendants alleged in the complaint constitute violations of procedural and substantive due process in that the defendants perpetrated a fraud on the state court. Thus, the facts that the Court has enumerated as undisputed merely reflect that certain documents were filed and that certain state court procedures followed as a matter of course from state law. Plaintiffs have complained that they should be given more time, until the close of discovery, to supplement the factual record. It is evident that the limited enumerated facts stated above will be neither contradicted nor materially altered by anything yet to be discovered or filed by plaintiffs. In other words, the Court has been given no reason to expect that any factual issues which will be material to the Court's decision are forthcoming.

The issues presented by the defendants' motion are, in large part, controlled by *Lossman v. Pekarske,* 707 F.2d 288 (7th Cir.1983). That case, like this one, involved the taking of a child from the custody of the parents, allegedly without good cause. In that case, as in this one, the defendants removed the child from the parents' custody by picking up the child from school and filing a petition for an adversary hearing on whether the child was in need of protection and services. There, as here, a hearing was held within the time limit provided by the statute. In addition, in this case the parents exercised their right to a jury trial on the allegations of the petition, all as provided by statute. The hearings held in both cases resulted in judicial determinations that the removal was justified.

In *Lossman,* these facts led the Court to conclude that the plaintiffs had suffered no injury, whatever due process violation might be proved. The Court recognized that the custody of children was a liberty interest which was deprived by the removal of children from the parents' custody. The Court also assumed, without deciding, that the child's rights were implicated as well. The Court decided not to reach the question of whether the deprivation under these facts violated the Due Process Clause. Cases since *Lossman* which have expanded upon the holding in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) leave little doubt that the availability of adequate state post-deprivation remedies will defeat procedural due process claims, whether the deprivation was negligent or intentional and whether liberty or property interests were implicated. *See Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). However, the Court will assume that a deprivation occurred on January 14, 1983, when the defendants took custody of Dana. The claim in *Lossman* was defeated because the post-deprivation hearing which the plaintiff received established, by way of collateral estoppel, that the plaintiff had abused his children and that no pre-deprivation hearing could have come to a more accurate conclusion:

> Not only is it unlikely that an adversary hearing on March 28 [the day the children were removed from his custody without a hearing] would have made any difference to the outcome of Lossman's custody dispute with the defendants; we can take it as certain that Lossman was not legally entitled to the custody of the children at that time. The findings made in the hearing of April 9 establish, by the principle of collateral estoppel, that he was an unfit parent not just on that day but on March 28; all of the evidence of unfitness that was before the Court on April 9 was based on events that had happened on or before March 28, as afterwards he was not in a position to

continue abusing the children (at least until they were returned to him in May).... [The determination made on April 9 after an adversary hearing more thorough and reliable than any adversary hearing that could have been convened on March 28 shows that a different outcome on March 28 probably would have been error.]

707 F.2d at 291 (citation omitted).

■ The hearings held after the removal of Dana from her parents' custody establish, for purposes of this case, by way of collateral estoppel, that Dana was in danger of further injury in her home and that her injuries were caused by the intentional acts of others. *Lossman* teaches that there are no damages when later proceedings result in continuation of custody by the authorities. The plaintiffs are not entitled to a trial on the issue of whether there was truly an emergency either. *Id.* at 292. Nor does the anxiety caused by the failure of the defendants to promptly inform the parents of their action support a constitutional claim. *Id.*

Plaintiffs' attempts to undercut the force of the *Lossman* court's holding are completely unpersuasive. First, plaintiffs argue that the *Lossman* defendants were armed with complaints from noncustodial relatives about the parent's abusive behavior and corroboration from the children. Here, defendants had a relatively minor and ambiguous injury consistent with, but not certainly caused by, a burn, and several utterly contradictory explanations from Dana, who was known to be an unreliable reporter in any event. But all this really says is that the evidence supporting the defendants' actions was better in *Lossman* than it is here. In both cases, however, the evidence was tested for sufficiency and probative value at a later hearing which resulted in affirmation of the defendants initial removal of the child. That is the underpinning of *Lossman,* so plaintiffs are really offering a distinction without a difference.

Second, and closely related to the first, plaintiffs argue that they did not get a "hearing" in the sense that the plaintiff in

*Lossman* did because the defendants committed a fraud on the Court by falsely presenting the facts. But the very purpose of a hearing is to decide factual disputes and to decide the legal import of those facts. Unless the plaintiffs were somehow denied the opportunity to challenge the evidence presented by the defendants, they can hardly complain of a due process violation simply because the factfinder accepted a version of the facts that the plaintiffs dispute. The Due Process Clause does not guarantee results; it guarantees only a right to be heard at a meaningful time and in a meaningful manner. If the Due Process Clause guaranteed results, then no decision would be final until a litigant ran out of forums which might entertain his lawsuit, no matter how thorough and fair the first hearing was.

■ Accordingly, the process that was accorded to plaintiffs in state court relative to Dana's custody forecloses any claims that the plaintiffs' rights were violated because the defendants were not truthful. Plaintiffs have made no claim that the state's statutory procedure was deficient in any respect. Thus, plaintiffs' reliance on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) is not appropriate. In the final hearing concerning Dana's removal, there was, in accordance with state law, a thoroughly adversarial proceeding culminating in a jury verdict contrary to the plaintiffs' main contention—that Dana's injuries were accidental. Whatever infirmities, whether constitutional or factual, there may have been in that proceeding, they should have been addressed within that proceeding or on appeal. A civil rights action in this Court is not an appeal, nor is it an opportunity for a trial *de novo* on factual issues already decided.

This analysis not only forecloses the plaintiffs' procedural due process claims, but their substantive due process and equal protection claims as well. The contours of plaintiffs' substantive due process claim are not delineated in the complaint or the briefs filed in this case. However, the

Court understands the assertion in the brief (plaintiffs' brief at page 26), that defendants' factual statements during the process were so inflammatory that they were "shocking to one's conscience," is an attempt to make such a claim. But, as previously indicated, defendants' allegations were tested in the adversary process that followed the removal of Dana from her parents' custody. Had such allegations resulted in an *ex parte* removal of indefinite duration without recourse to further proceedings by the parents, there might be something to this claim. That is not the case here. Defendants' allegations were tested in an adversarial hearing to a jury with an appropriate burden of proof on the persons petitioning for custody of clear and convincing evidence. Wis.Stat. § 48.31(1).

█ Nor can plaintiffs make out a claim of a violation of their substantive due process rights by the failure of the defendants to offer social services before the removal of Dana. Under Wis.Stat. § 48.981(3)(c)3, it is mandated that appropriate services are to be provided to the family of a child determined by the county welfare agency to be in need of services. If the family refuses such services, the statute provides that a petition that the child is in need of protection or services may be filed. However, this statute in no way limits the emergency procedures for taking a child into custody, which the county officials relied upon here. Rather, it merely provides an additional reason for filing a petition or an alternative manner for the authorities to proceed. If plaintiffs mean to suggest that services prior to filing a petition or taking a child into custody are required, that assertion should have been litigated in the state court proceeding since, if plaintiffs are correct, the petition would have been dismissed. *Res judicata* and collateral estoppel principles bar this claim as well.

█ Finally, the Court agrees with defendants that there is no evidence supporting a claim that the defendants proceeded as they did because of the economic or educational background of Dana's parents. This is the basis of the plaintiffs' equal protection claim. But even if the plaintiffs were to advance some evidence supporting this claim, the *Lossman* decision forecloses this avenue of recovery. There is no allegation that the jury in the proceeding below was instructed to take education or economic circumstances into account. In fact, petitions based on allegations of neglect may not use poverty to support such allegations. Wis.Stat. § 48.13(10). If the jury's deliberations were free from such bias, and the Court must assume they were, then plaintiffs were not injured, even if such considerations influenced the defendants.

It is important to note that neither this decision nor the *Lossman* case which provides the basis for this decision is based upon the reasoning of the *Parratt v. Taylor* line of cases. Plaintiffs do not fail because of the adequacy of the post deprivation process afforded them. They fail by way of collateral estoppel because of the legal and factual underpinnings necessary to the decisions in state court. As in *Lossman*, plaintiffs here do not argue that the hearing they received failed to satisfy the requirements of due process except by way of the evidence and testimony of the defendants presented at that hearing. But the result of that hearing establishes not only the sufficiency of the evidence presented, but also the legal insufficiency of arguments which were raised, or might have been raised, in opposition to the trial court's disposition of the matter.

Accordingly, the Court must grant defendants' summary judgment motion.

## ORDER

IT IS ORDERED that defendants' motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that judgment shall be entered, DISMISSING plaintiffs' complaint with costs.