**Walter W. DONALD, et al.,
Plaintiffs–Appellants,**

v.

**POLK COUNTY, et al.,
Defendants–Appellees.**

No. 87–1138.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1987.

Decided Jan. 13, 1988.

David E. Lasker, Buffett, Dew, Blaney, Olson & Lasker, Madison, Wis., for plaintiffs-appellants.

Claude J. Covelli, Boardman, Suhr, Curry & Field, Madison, Wis., for defendants-appellees.

Before WOOD and POSNER, Circuit Judges, and GRANT, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Dana Donald was taken into protective custody on January 14, 1983 by the Polk County Department of Social Services. Following a probable cause hearing and jury trial finding that Dana had been physically abused, Dana remained in the Department's custody until June 1, 1986, when she returned to her parents' custody. Dana, her parents, Walter and Kathryn, and her siblings brought this action under 42 U.S.C. § 1983, claiming that the defendants—Polk County welfare and law enforcement officers and agencies—violated the Donalds' constitutional rights by removing Dana from their home and improperly investigating Dana's case. The district court held that the Donalds' claims are barred by the doctrine of collateral estoppel and granted summary judgment for the defendants. We affirm.

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

## I. BACKGROUND

The following facts are undisputed. In January 1983, Dana Donald was a ten-year-old epileptic child with a mental age of less than four years. Prior to 1983, agents or employees of defendant Polk County Department of Social Services (Department) had contacted Dana's parents, plaintiffs Walter and Kathryn Donald, on several occasions concerning possible abuse of Dana.[1]

On January 13, 1983, school officials contacted Nancy L. Stewart, a Department dispositional worker, and informed her that Dana had two sores on her back that the school officials suspected may have been caused by other than accidental means. Stewart then consulted her supervisor, defendant Calvin G. Schladweiler, and they jointly decided that Stewart would interview Dana on Friday, January 14, 1983.

During her January 14 interview with Dana, Stewart observed two circular lesions on Dana's back, each smaller than a dime. Dana gave four or five different explanations for the injuries on her back. Stewart believed that the injuries may have been intentionally inflicted. Stewart returned to her office and discussed taking Dana into custody with Schladweiler and Dave Sarow, an intake worker.[2] It was decided at that meeting to take Dana into custody to avoid the possibility of further injury.

Stewart picked up Dana at her school and took Dana to a physician, who examined her. Stewart then took Dana to a foster home for the weekend until a probable cause hearing could be held on Monday, January 17. Although the intake form indicated that Stewart notified Dana's parents at 4:00 p.m. on January 14, she did not do so. When Dana did not arrive home on the school bus, the Donalds were greatly concerned and reported to the sheriff that she was missing. Only after prompting by the FBI, the sheriff told the Donalds that Dana was in the custody of the Department. When the Donalds tried to learn more, Stewart merely said that Dana was in protective custody and that she would see them in court on the following Monday.

Pursuant to Wisconsin law, Wis.Stat. Ann. § 48.255, Stewart filed a petition alleging that Dana was in need of protection and services. In this petition, Stewart stated that Dana had two circular lesions on her back and that a physician had stated that the injuries were burns. In addition, the petition stated that Dana had several circular scars on her hands and feet. Stewart also related the injuries to Dana that had been the subject of earlier contacts between the Department and the Donalds.

On Monday, January 17, 1983, a probable cause hearing was held in the state court to determine whether the county should continue to hold Dana in custody. The court found probable cause to keep Dana in custody pending a fact-finding hearing to determine whether Dana was in need of protection.

A jury trial was held on February 11, 1983. The jury returned a verdict that Dana had been physically abused. Concluding that Dana was in need of protection, the state court ordered that she continue in the Department's custody pending a dispositional hearing.

The dispositional hearing was held on March 8, 1983. The state court ordered that Dana be placed in foster care. Dana remained in foster care until June 1, 1986, when she returned to her parents' custody.

## II. STANDARD OF REVIEW

■ The district court granted the defendants' motion for summary judgment. A district court should grant summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing a grant of summary judgment, we must first determine whether there are any

---

1. None of these contacts resulted in the Department taking Dana into custody or instituting formal proceedings. *Donald v. Polk County,* 649 F.Supp. 1408, 1410 (W.D.Wis.1986).

2. Plaintiffs have not named Sarow as a defendant in this case.

genuine issues of material fact. " '[T]o preclude summary judgment, the nonmoving party must show the disputed fact to be material, that is, it must be outcome-determinative under the applicable law.... [F]acts not outcome-determinative under the applicable law, though in dispute may still permit the entry of summary judgment.' " *Wallace v. Greer*, 821 F.2d 1274, 1276 (7th Cir.1987) (quoting *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n*, 806 F.2d 146, 149 (7th Cir.1986)). We must draw all reasonable inferences in the light most favorable to the nonmoving party. If no genuine issues of material fact exist, we must determine whether summary judgment is correct as a matter of law. *Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 546 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987). In appeals from a grant of summary judgment, a reviewing court may affirm on any ground that finds support in the record. *Wallace v. Greer*, 821 F.2d at 1277.

 To prevail on a claim under section 1983, the Donalds must show that: (1) they held a constitutionally protected right; (2) they were deprived of this right in violation of the Constitution; (3) the defendants intentionally caused this deprivation; and (4) the defendants acted under color of law.[3] Summary judgment is proper against a party who fails to establish the existence of an element essential to his case, and on which that party will bear the burden of proof at trial. As the Supreme

Court recently stated: "In such a situation, there can be 'no genuine issue as to any material fact,' since 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## III. ANALYSIS

The Donalds claim that the defendants violated several of their constitutional rights. The Donalds assert that because the defendants took Dana into custody without first providing notice and a hearing, the defendants violated their right to procedural due process under the fourteenth amendment. The Donalds also argue that the defendants deprived them of substantive constitutional rights without due process of law, including the right to family privacy and family life; the right to be offered social services under Chapter 48 of the Wisconsin Statutes; and the right to be free from unreasonable searches and seizures. Finally, the Donalds claim that the defendants violated their right to equal protection under the laws of Wisconsin, contrary to the equal protection clause of the fourteenth amendment. We will consider each of these contentions in turn.

### A. Procedural Due Process

 The Donalds' most cogent argument is that the Department took Dana into custody without prior notice to her parents[4] or any opportunity for a pre-taking hearing.

---

3. Section 1983 provides:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

 42 U.S.C. § 1983 (1982). *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (mere negligence will not satisfy the state of mind requirement under § 1983).

 For the municipal defendants, the Donalds must show that the wrongful conduct was pursuant to a municipality's official policy, custom

or usage and that the deprivation was caused by the policy, custom or usage. *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Powe v. City of Chicago*, 664 F.2d 639, 643 (7th Cir.1981).

4. Dana's siblings are also named as plaintiffs in this case. It is not at all clear that they have standing to assert any of the claims raised here. Dana's siblings have failed to cite any authority supporting their liberty interest in having their sister at home. Nevertheless, because we find that the Donalds' claims are foreclosed as a matter of law, we do not need to reach this question. *See Price v. Pierce*, 823 F.2d 1114, 1118 (7th Cir.1987) (court found it unnecessary to decide difficult issues of standing that would not affect the outcome of the case).

Drawing all reasonable inferences in the light most favorable to the Donalds, it is nevertheless clear that this claim cannot survive because the Donalds failed to show actual damages resulting from the postdeprivation notice and hearing, an essential element of their claim.

In its opinion, the district court primarily relied on *Lossman v. Pekarske*, 707 F.2d 288 (7th Cir.1983). That case was similar to the present one in that it involved the taking of children from the custody of their parent, allegedly without good cause. As in this case, the defendants in *Lossman* picked the children up from school without previously or promptly notifying the custodial parent. There, as here, a hearing was held within the time limit prescribed by Wisconsin law. The hearings in both cases resulted in judicial determinations that the removals were justified.

The fourteenth amendment forbids a state from taking one's life, liberty or property without due process of law. For purposes of ruling on the grant of summary judgment, we will assume that the Donalds were deprived of liberty when the defendants took Dana into custody.[5]

We next must consider whether the Donalds were afforded due process of law. In *Lossman*, this court held that the postdeprivation hearing that Lossman received satisfied due process. *Lossman* also emphasized that suits under section 1983 are tort damage actions. As in any tort action, a plaintiff under section 1983 cannot survive summary judgment unless he has sustained actual damages. *Lossman*, 707 F.2d at 290; *see Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). Because the hearing established that Lossman had abused his children,

Lossman could not have sustained damages as a result of any delay in the notice or hearing.

Likewise, the Donalds have suffered no actual damages. In the adversarial hearing before the Wisconsin state court on Monday, January 17, 1983, the judge found probable cause that Dana's injuries were intentionally caused and that she was in danger of further injury if allowed to return home. The Donalds do not contend that the hearing itself was inadequate for due process purposes. If probable cause to take Dana into custody existed on Monday, January 17, the defendants also must have had probable cause to take Dana into custody on the previous Friday. All of the evidence of abuse before the court on January 17 was based on events that occurred on January 14 or before. *Lossman* teaches that if an earlier notice or hearing would not have prevented the removal of the child from her home, and the delay was justified, the delay in the notice or hearing could not injure the plaintiff.

■■■ The only possible injury the Donalds have claimed is the anxiety they suffered as a result of the delay in notifying them of Dana's whereabouts on January 14. The probable cause hearing on January 17 and the subsequent jury trial both established that Dana was an abused child and therefore a true emergency existed on January 14 when the defendants took her into custody. In an emergency situation, the government may take away property or liberty, so long as postdeprivation notice and a hearing are provided. *See, e.g., Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299–300, 101 S.Ct. 2352, 2372, 69 L.Ed.2d 1 (1981); *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 677–80, 94 S.Ct. 2080, 2088–90, 40 L.Ed.2d 452 (1974). *See also*

---

**5.** Mr. and Mrs. Donald's liberty clearly includes the custody of their minor children. *Stanley v. Illinois*, 405 U.S. 645, 651–52, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972); *Lossman*, 707 F.2d at 290. Dana may not have such a right. This court has questioned whether transferring a child from the custody of her parents to the custody of another implicates a liberty interest. *Id.* Because Wisconsin allows a child to bring a

tort action for false imprisonment if she is wrongfully removed from her parents' custody, *see Drabek v. Sabley*, 31 Wis.2d 184, 142 N.W.2d 798 (1966), that may serve as a sufficient liberty interest for fourteenth amendment purposes. *Lossman*, 707 F.2d at 290. This issue, like the standing of Dana's siblings, need not be resolved in this case.

*Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir.1982) (no denial of due process even in nonemergency situation if postdeprivation hearing is provided and delay is justified). Although the defendants probably could have and should have notified Dana's family more promptly, their first priority was to take Dana safely into custody and settle her into a foster home for the weekend. While the Donalds undoubtedly were anxious when Dana did not arrive home, they were notified that afternoon or evening that Dana was in the Department's custody. In such an emergency, postdeprivation notification is consistent with due process. The Donalds have not shown that the delay in notifying them was so excessive that it violated due process.[6] In dealing with a similar allegation of delay in *Lossman*, Judge Posner explained:

> Maybe they could have reached Lossman earlier in the day to tell him what they were doing, but their failure to do so was not significant. It would have been irresponsible for them to have left the children in Lossman's custody.... And if there was, therefore, no denial of due process in depriving Lossman of his custody of the children, and therefore no improper deprivation of a constitutionally protected liberty, any anxiety the defendants may have created in Lossman's mind regarding the whereabouts of the children would not support a constitutional claim. Peace of mind is not liberty.

*Lossman*, 707 F.2d at 292. Similarly, given the emergency context, the delay in the present case does not support a constitutional claim. *See Duchesne v. Sugarman*, 566 F.2d 817, 825–26 (2d Cir.1977) (a threat to a child's safety is sufficient justification for a postdeprivation hearing).

### B. Right to Family Life

■ The Donalds' next major contention is that the defendants violated the Donalds' constitutional right to family privacy and family life by conspiring to "perpetrate a fraud upon the court," resulting in Dana's removal from the Donald household. The Donalds claim that the defendants accomplished this by using their investigation, reports, petitions to the court, and sworn testimony to create the false impression that Dana was being abused. The Donalds, however, completely fail to support these broad, vague allegations. The Donalds have cited absolutely no specific instances of a false statement or even an exaggerated statement in any of the defendants' reports, petitions, or testimony. While the Donalds claim the defendants' investigation was biased, they propose no reasonable motive why the defendants would be prejudiced against the Donalds. Thus, the Donalds' claim of a conspiracy to perpetrate a fraud upon the court is not a genuine issue of fact because it could not "reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202 (1986). *See Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985) ("[A]lthough summary judgment is usually not proper in a case involving a weighing of conflicting questions of motive and intent, summary judgment is proper where the plaintiff presents no indications of motive and intent supportive of his position."). In any event, even if the Donalds could show that the defendants acted fraudulently or in bad faith, their claims would nevertheless be barred by the doctrine of collateral estoppel.

The district court found that the doctrine of collateral estoppel barred the Donalds' claims. The doctrine of collateral estoppel, also called issue preclusion, generally prevents a party from relitigating an issue the party has previously litigated and lost. This policy promotes judicial efficiency and prevents inconsistent decisions while affording each party one fair opportunity to litigate an issue. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Appley v. West*, 832 F.2d 1021, 1025 (7th Cir.1987); *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 392–93 (7th Cir.1986). In *Allen v. McCurry*, the United States Supreme Court specifical-

---

6. The record does not state the exact time that the Donalds were notified of Dana's whereabouts, nor does it indicate what time Dana would normally arrive home on the school bus.

ly held that the doctrine of collateral estoppel applies to cases brought under 42 U.S.C. § 1983.[7]

■ A federal court must give the same preclusive effect to a state court ruling as would a court in the rendering state. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Allen*, 449 U.S. at 96, 101 S.Ct. at 415. Therefore, the Wisconsin rules governing collateral estoppel apply to this case. Wisconsin law bars parties from relitigating issues that were "litigated, determined, and necessary to the decision in the prior proceeding." *Reckner v. Reckner*, 105 Wis.2d 425, 314 N.W.2d 159, 165 (Wis.App.1981) (citing *State ex rel. Flowers v. Department of Health & Social Servs.*, 81 Wis.2d 376, 260 N.W.2d 727, 734 (1978)); *Guenther v. Holmgreen*, 738 F.2d 879, 884 (7th Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985). Wisconsin courts do not require mutuality of parties[8] where collateral estoppel is "asserted defensively to prevent a party from relitigating an issue which has been conclusively resolved against that party in a prior case." *Crowall v. Heritage Mut. Ins. Co.*, 118 Wis.2d 120, 346 N.W.2d 327, 330 (Wis.App.1984). Therefore, Wisconsin would give preclusive effect to state court determinations on issues that were: (1) identical; (2) actually litigated; and (3) necessary to the state court's final judgment. *Schneider v. Mistele*, 39 Wis.2d 137, 158 N.W.2d 383, 384 n. 5 (1968); *Reckner*, 314 N.W.2d at 165. A corollary to these requirements is that the party being precluded must have had a fair opportunity procedurally, substantively, and evidentially to litigate his claim in the first proceeding. *Crowall*, 346 N.W.2d at 331.

■ The defendants argue that collateral estoppel precludes the Donalds from claiming that the defendants were not truthful in their reports, investigations,

court petitions, and court testimony. At the outset, we note that the Donalds could have raised their claims of fraud and bad faith in the state court, and clearly the risk of losing custody of Dana provided them with a strong incentive to do so. Nevertheless, they did not specifically raise the issue of fraud in the state court proceedings, although the Donalds had a full and fair opportunity to do so. The Donalds claim that they were not aware of the alleged fraud at the time of the state court proceedings. We fail to see how the Donalds could *not* have been aware of the alleged falsities; the Donalds do not claim that they were not afforded full discovery rights or were not allowed to listen to the in-court testimony of the defendants.

We agree with the district court that the Donalds' claims are precluded by the doctrine of collateral estoppel. The Donalds claim that the defendants' testimony, petitions, and reports were false. The jury necessarily decided this issue in reaching its verdict. If the jury had not believed the defendants, the defendants could not have met their burden of clear and convincing evidence. *See Chrysler Corp. v. Lakeshore Commercial Fin. Corp.*, 389 F.Supp. 1216, 1221 (E.D.Wis.1975) (collateral estoppel applies to issues "if entry of judgment in the first suit was dependent upon resolution of those issues"), *aff'd*, 549 F.2d 804 (7th Cir.1977). The Donalds do not allege that they were denied the right to challenge the evidence that the defendants presented. Because the issue of credibility was actually and necessarily determined in the prior proceedings, the Donalds are estopped from relitigating the issue here.

The Donalds claim, however, that collateral estoppel should not apply in this case because they did not receive a full and fair opportunity to litigate the issue of whether the defendants were fraudulent. Wisconsin courts permit parties to avoid the appli-

---

7. Although collateral estoppel does apply to issues actually litigated in a previous action, the Court in *Allen* qualified their holding by noting that "this case does not involve the question whether a § 1983 claimant can litigate in federal court an issue he might have raised but did

not raise in previous litigation." 449 U.S. at 94 n. 5, 101 S.Ct. at 415 n. 5.

8. The traditional rule of mutuality allowed courts to apply collateral estoppel only to actions between the same parties, or their privies, that were involved in the previous proceeding.

cation of collateral estoppel if they did not have a full and fair opportunity to pursue their claim in the initial action. *Crowall,* 346 N.W.2d at 331. One Wisconsin case, however, suggests that plaintiffs who did not seek to remedy procedural unfairness through the appellate process cannot raise the issue collaterally. In *Spearing v. County of Bayfield,* 133 Wis.2d 165, 394 N.W.2d 761 (Wis.App.1986), the plaintiffs originally brought suit in federal court. Several months before trial, the court ruled that Canadian law would apply. Following an unfavorable federal verdict, the plaintiffs appealed but did not raise the issue of the court's decision to apply Canadian law. The plaintiffs next filed suit in state court. The plaintiffs claimed that because they had anticipated that Wisconsin law would apply at trial, they were not properly prepared for trial. The Wisconsin Court of Appeals ruled that collateral estoppel foreclosed the plaintiffs' claims of procedural unfairness in the federal forum. The Wisconsin court noted that the plaintiffs' claims were remediable through the federal appellate process. Further, the court found that the claims of unfairness were unfounded. 394 N.W.2d at 764–65.

Applying Wisconsin law as articulated in *Spearing,* we believe that a Wisconsin court would find that the earlier state court trial foreclosed the Donalds' claims of fraud. As in *Spearing,* the Donalds could have pursued their claims of fraud through the state appellate process. The court in *Spearing* also relied on the fact that the plaintiffs' claims were unfounded. As we noted, the Donalds have failed to support their conclusory allegations of bad faith on the part of the defendants. The Donalds had every incentive and opportunity to raise all possible arguments at both the probable cause hearing and the later jury trial. Because Wisconsin courts, applying the approach in *Spearing,* would find these claims foreclosed, the Donalds are also pre-

cluded from bringing these claims in federal court.

## C. Right to Social Services

■ The Donalds' third claim is that the defendants deprived them of their right to social services under Chapter 48 of the Wisconsin Statutes. Wisconsin law mandates that appropriate services are to be provided to the family of any child that the county welfare agency determines to be in need of services. If the family refuses such services, the statute provides that a petition that the child is in need of protection or services may be filed. Wis.Stat. Ann. § 48.981(3)(c)(3) (1987). The district court found that while the statute provides one method in which county welfare workers may proceed in deciding whether to file a petition, the statute does not limit emergency procedures for taking a child into custody. 649 F.Supp. at 1413. The Donalds concede this point.[9]

In any event, this court has held that a statutory obligation to provide social services is not a constitutionally protected right. In *DeShaney v. Winnebago County Dep't of Social Servs.,* 812 F.2d 298 (7th Cir.1987), the Department did not take an abused child into custody. The plaintiffs in *DeShaney* asserted a constitutional right to receive this social service. This court held that there is no federal right to receive social services from the state. As we explained:

> The men who framed the original Constitution and the Fourteenth Amendment were worried about government's oppressing the citizenry rather than about its failing to provide adequate social services. For such failures, political remedies (along with such legal remedies as states might see fit to provide in their own courts) were assumed to be adequate.

*Id.* at 301. Because the right to receive social services is not a constitutionally protected right, the Donalds failed to establish

---

**9.** The Donalds insist that while the emergency procedures outlined in the statute are not exclusive, the Department decided to use emergency procedures in bad faith, knowing that no true emergency existed. The state court finding of

probable cause on January 17, however, precludes the Donalds from claiming that a true emergency did not exist on January 14. *Loss-man,* 707 F.2d at 292.

an essential element of their section 1983 claim. The district court therefore properly awarded the defendants summary judgment on this issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### D. Right to be Free from Unreasonable Seizures

The Donalds next claim that the defendants violated their fourth amendment right to be free from unlawful searches and seizures. None of the plaintiffs in this case have been the object of a search or seizure, with the possible exception of Dana. In *Lossman v. Pekarske,* this court questioned whether a child is truly deprived of a liberty interest when custody is transferred from the parents to the state. 707 F.2d at 290; *see supra* note 5. We do not need to reach this question, however, because even if Dana was seized in the fourth amendment sense, it was not an illegal seizure.

■ The fourth amendment, as applied to the states by the fourteenth amendment, only prohibits "unreasonable" seizures. A seizure is lawful if a judicial officer finds probable cause to hold the seized individual either before or promptly after the individual is taken into custody. *Baker v. McCollan,* 443 U.S. 137, 142–43, 99 S.Ct. 2689, 2693–94, 61 L.Ed.2d 433 (1979); *Gerstein v. Pugh,* 420 U.S. 103, 125, 95 S.Ct. 854, 868, 43 L.Ed.2d 54 (1975). The Donalds concede that, beginning on January 17, 1983, a judicial determination of probable cause supported the Department's custody of Dana until she returned to her parents in 1986. The Donalds only contest the original seizure on January 14, arguing that the probable cause determination on January 17 merely established probable cause to continue holding Dana in custody, not that probable cause existed to initially take Dana into custody on January 14.

Intake and dispositional workers have the power of police officers for the purpose of taking children into physical custody where the child is in immediate danger from her surroundings. Wis.Stat.Ann. § 48.08(2) (1987). Pursuant to Wisconsin law, the Department took Dana into custody on January 14 only after an intake worker found probable cause to believe that if Dana was not taken into custody, she would be subject to injury by others. *Id.* § 48.205(1)(a). A hearing to determine whether the Department should continue to hold Dana was held on January 17, as Wisconsin law mandates. *Id.* § 48.21(1) (hearing must be held within twenty-four hours, excluding Saturdays and Sundays, of the time the decision to hold the child was made).

If Dana was seized, it was not an illegal act. The defendants acted according to the statutory requirements of Wisconsin law. Defendant Stewart made a finding of probable cause that Dana was at risk of immediate injury if not taken into custody, just as a police officer in the field can make an arrest based on her own determination of probable cause. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). As the fourth amendment requires, this initial finding of probable cause was promptly followed by a judicial determination of probable cause. *Baker,* 443 U.S. at 142–43, 99 S.Ct. at 2693–94. Further, to succeed in a section 1983 action based upon a violation of the fourth amendment, a plaintiff must show not only that the seizure was illegal, *i.e.* without probable cause, but also that the defendant had no reasonable good faith belief in the legality of the seizure. *Guenther v. Holmgreen,* 738 F.2d 879, 888 (7th Cir.1984); *Whitley v. Seibel,* 676 F.2d 245, 248 (7th Cir.), *cert. denied,* 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982). The Supreme Court in *Allen v. McCurry* noted that a state court's finding that an arrest was supported by probable cause would foreclose a section 1983 claim that the arresting officers acted in bad faith. 449 U.S. at 102 n. 18, 101 S.Ct. at 419 n. 18.

Applying these principles, collateral estoppel bars the Donalds' claims based on the fourth amendment. On January 17, the state court found probable cause to continue to hold Dana in custody. Because Dana was in custody from the time of the initial probable cause determination by the Department workers until the hearing on January 17, the state court could only have

based its finding of probable cause on events that occurred prior to taking Dana into custody. Therefore, the state court's determination that probable cause to hold Dana existed on January 17 necessarily implied that probable cause must also have existed on January 14. The Donalds cannot relitigate the issue of probable cause in federal court after it has been conclusively determined in state court. *See Lossman,* 707 F.2d at 291. Likewise, the state court determination of probable cause precludes the Donalds from showing that Stewart or any of the other defendants acted in bad faith in taking Dana into custody. *Allen,* 449 U.S. at 102 n. 18, 101 S.Ct. at 419 n. 18.

### E. Equal Protection

 Finally, the Donalds complain that the defendants violated their fourteenth amendment right to equal protection under the laws of Wisconsin. The gist of this claim is that the defendants conducted their investigation because of the Donalds' poverty and relative lack of education. The Donalds claim that, because defendants were aware of the Donalds' economic and educational background, "[a] jury could easily find at trial that defendants were motivated by plaintiffs' poverty, source of income, and lack of education." Even assuming a jury would make the jump from mere knowledge to motivation, the *Lossman* decision forecloses this avenue of recovery.

As the district court found, the Donalds have advanced no evidence that the defendants proceeded as they did because of the Donalds' education or financial status. 649 F.Supp. at 1413. Even if such evidence was proffered, *Lossman* precludes the equal protection claim because the Donalds were not injured. The sole question before the jury in the state court trial was whether Dana was intentionally and physically abused. *Id.* The defendants do not allege that the jury was asked to impermissibly consider the Donalds' education or economic status; in fact, it is not clear from the record before us that such evidence was even introduced at trial. Therefore, we must assume, as did the district court, that the jury verdict was free of such bias. As

in *Lossman,* then, the Donalds have failed to establish a causal connection between the biased investigations and any injury resulting from the removal of Dana from her parents' custody. *Lossman,* 707 F.2d at 291.

## IV. CONCLUSION

Despite their many claims of constitutional violations, the Donalds' underlying complaint seems to be that they are unhappy with the jury verdict resulting from the state trial. If so, their proper avenue of redress would have been to appeal that verdict. Instead, the Donalds chose to bring this section 1983 action. "In passing § 1983, '[Congress did not intend] to allow relitigation after a full and fair hearing simply because the state court's decision may have been erroneous.'" *Guenther v. Holmgreen,* 738 F.2d at 889 (quoting *Allen v. McCurry,* 449 U.S. at 101, 101 S.Ct. at 418). Because the Donalds' claims are all barred, the order of the district court granting summary judgment is

Affirmed.