Donald G. **ALLISON**, Plaintiff,

v.

William E. **DUGAN**, et al., Defendants.

**MIDWEST OPERATING ENGINEERS PENSION TRUST FUND,**
Counterplaintiff,

v.

Donald G. **ALLISON**, Counterdefendant.

**Civ. No. H88–579.**

United States District Court,
N.D. Indiana,
Hammond Division.

May 16, 1990.

Cora M. Vaughn, Gary, Ind., for plaintiff.

Baum & Sigman, Ltd., Louis E. Sigman, Alan H. Auerbach, Bernard M. Baum, James M. Neuman, Dale D. Pierson, Chicago, Ill., for defendants.

## ORDER

LOZANO, District Judge.

This matter is before the Court on the defendants' Motion to Strike Plaintiff's Jury Demand and Punitive Damages Claim From the Amended Complaint, filed October 30, 1989. Also before the Court is the Motion for Summary Judgment on the Counterclaim, filed April 16, 1990, by the defendant-counterplaintiff, Midwest Operating Engineers Pension Trust Fund. For the reasons set forth herein, the defendants' Motion to Strike Plaintiff's Jury Demand is GRANTED; the defendants' Motion to Strike Plaintiff's Punitive Damages Claim is GRANTED; and the defendant-counterplaintiff's Motion for Summary Judgment on the Counterclaim is GRANTED.

## BACKGROUND

On October 5, 1989, Donald G. Allison (hereinafter referred to as "Allison"), filed an Amended Complaint. In this Amended Complaint, Allison alleges that this is an action to recover benefits and for breach of fiduciary duty and to enforce other rights arising under the Employment Retirement Income Security Act of 1974 (ERISA), § 502, 29 U.S.C. §§ 1132(a)(1)(B); 1132(a)(2); and 1132(a)(3). Allison also alleges that this is an action for declaratory judgment arising under 28 U.S.C. § 2201.

Allison is the General Manager at Taylith, Inc. Allison formerly worked as an operating engineer for several successive employers, and was a member of the defendant, International Union of Operating Engineers, Local 150 (hereinafter referred to as "Union") from 1967 until 1983. Allison alleges that each of his employers made contributions on his behalf to the defendant, Midwest Operating Engineers Pension Trust Fund (hereinafter referred to as "Trust Fund"), which operates under a plan known as the Agreement and Declaration of Trust and Pension Plan (hereinafter referred to as "Plan"). The Plan is a "qualified trust pension plan" under the provisions of 26 U.S.C. § 401, *et. seq.*, and 29 U.S.C. § 1132(e)(1). Allison terminated his employment with the last of his employers to submit contributions to the Plan on his behalf in June, 1983.

Allison became eligible for early retirement benefits under the Plan on or about March 1, 1988. Allison filed an application for benefits on February 22, 1988, which was approved on or about May 6, 1988. Allison alleges that he has not engaged in "disqualifying employment" within the meaning of the Plan, and that his employment with Taylith, Inc. has been known at all times by the defendants, Board of Trustees of the Midwest Operating Engineers Pension Trust Fund (hereinafter referred to as "Board of Trustees").

The Union, by letter dated May 3, 1988 and signed by the defendant, William E. Dugan (hereinafter referred to as "Du-

gan"),[1] demanded that Allison recognize Local 150 as the collective bargaining agent of Taylith, Inc.'s employees. Allison refused to recognize Local 150 because Taylith, Inc.'s employees were already represented by a labor union. Thereafter, Allison was notified that his pension benefits were suspended effective July 1, 1988. The reason given for the suspension of benefits was that the Board of Trustees had received information that Allison was working in "disqualifying employment." On or about September 13, 1988, the Board of Trustees upheld the decision to suspend Allison's pension benefits and demanded that Allison refund all previously paid pension benefits.

Allison contends that he was not engaged in "disqualifying employment" and that his benefits were actually terminated because he, as General Manager of Taylith, Inc., refused to recognize Local 150 as the Collective Bargaining Agent of its employees. Allison sues Dugan, both as an individual and in his capacities as Chairman of the Board of Trustees of the Midwest Operating Engineers Pension Trust Fund and as an agent of International Union of Operating Engineers, Local Union No. 150. Allison also sues the Trust Fund; the Board of Trustees, who are the Plan sponsors and Plan administrators; the Union; and Larry W. Bushmaker, the Administrative Manager of the Plan (hereinafter referred to as "Bushmaker"). See Allison's Amended Complaint for Declaratory Judgment (hereinafter referred to as "Amended Complaint", at 2–3.) Allison alleges that each of the defendants were Plan fiduciaries pursuant to 29 U.S.C. § 1002(21) and as such, owed the Plan participants, including Allison, the duty to act solely in the interest of the Plan beneficiaries and participants. (Amended Complaint at 3.)

Allison's Amended Complaint is set forth in three counts. In Count One, Allison alleges that the Board of Trustees wrongfully and in bad faith terminated his pension income on the basis that Allison was engaged in "disqualifying employment".

Allison further alleges that the Board of Trustees' actions were prompted by Dugan and Local 150 in retaliation against Allison, who refused to recognize Local 150 as the collective bargaining agent of Taylith, Inc. In his prayer for relief, Allison requests declaratory judgment that he was not engaged in disqualifying employment within the meaning of the Plan and ERISA, and that his pension benefits were wrongfully terminated *inter alia.*

In Count Two of the Amended Complaint Allison alleges that defendants breached their fiduciary duty and requests the reinstatement of his pension benefits, a finding that defendants breached their fiduciary duties, and compensatory and punitive damages. In Count Three of the Amended Complaint Allison alleges that the Board of Trustees acted in an arbitrary and unreasonable manner in determining that Allison was engaged in "disqualifying employment". Allison also alleges that as a direct and proximate result of the failure of the Board of Trustees to act in a non-discriminatory manner, and as a result of the Board of Trustees' arbitrary and unreasonable action in denying Allison his pension benefits, Allison has suffered substantial financial harm. Allison seeks compensatory damages, punitive damages, and declaratory judgment in his prayer for relief as to Count Three.

The defendants have moved to strike Allison's demand for a jury trial as well as his claim for punitive damages. Defendants contend that Allison has demanded a jury trial despite the fact that none of his claims provide a right to a jury trial. Defendants also contend that Allison is not entitled to punitive damages for any of the claims he has made.

In addition, the defendant-counterplaintiff, Trust Fund, has filed a Counterclaim against Allison seeking enforcement of its suspension of benefits and the recovery from Allison of the early retirement pension benefits received by him between March 1, 1988 and September 1, 1988, when his early retirement benefits were suspend-

---

1. Dugan is the Chairman of the Board of Trustees charged with administering the Plan and is also President of the International Union of Operating Engineers, Local 150.

ed. The Fund has moved for summary judgment on the Counterclaim and, in addition to the recovery of $1865.10 in benefits paid to Allison, seeks an award of its reasonable attorneys' fees and costs incurred in prosecuting the Counterclaim.

## DISCUSSION

### Jury Demand

■ The enforcement provisions of ERISA in 29 U.S.C. § 1132 do not expressly provide for jury trials. *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 393 (3rd Cir. 1988); *Turner v. Leesona,* 673 F.Supp. 67, 68–69 (D.R.I.1987). If legislative intent does not provide a ready answer, which it does not in this case, then the question is whether the rights and remedies created are traditionally enforced in actions at law or equity. *Turner,* 673 F.Supp. at 69. In resolving this question, the Court notes that the form of the remedy requested in Allison's Complaint is not controlling as to the characterization of the action as legal or equitable. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).

As noted previously, Allison alleges that this action is an action to recover benefits and for breach of fiduciary duty and to enforce other rights arising under § 502 of ERISA, 29 U.S.C. §§ 1132(a)(1)(B); 1132(a)(2); and 1132(a)(3).

Section 1132(a)(3) provides:

A civil action may be brought by a participant, beneficiary, or fiduciary to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provision of this subchapter or the terms of the plan …

29 U.S.C. § 1132(a)(3). The language of this section reveals that it is meant only to provide equitable relief. *Cox,* 861 F.2d 393. See also, *Bugher v. Feightner,* 722 F.2d 1356, 1358–59 (7th Cir.1983); *Wardle v. Central States, Southeast and Southwest Area Pension Trust,* 627 F.2d 820 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). As such, Congress can be said to have intended that there be no right to a jury trial.

*Cox,* 861 F.2d 393. Therefore, Allison is not entitled to a jury trial in his claim brought pursuant to 29 U.S.C. § 1132(a)(3).

Allison also asserts an action premised upon 29 U.S.C. § 1132(a)(2), which provides:

A civil action may be brought by the Secretary, or by a participant or fiduciary for appropriate relief under § 1109 of this Title.

29 U.S.C. § 1132(a)(2). Section 1109 provides for personal liability of the fiduciary for losses resulting from his breach, and requires the fiduciary to restore to the Plan profits made through use of Plan assets and subjects the fiduciary to "such other equitable or remedial relief as the Court deems appropriate." See generally, 29 U.S.C. § 1109.

Historically speaking, claims for breach of a fiduciary duty are almost uniformly equitable in nature. *Turner,* 673 F.Supp. 71. The clear weight of authority holds that there is no right to a jury trial on an ERISA action arising under Section 502(a)(2), 29 U.S.C. § 1132(a)(2). See, *Turner,* 673 F.Supp. at 71; *Hollenbeck v. Falstaff Brewing Corp.,* 605 F.Supp. 421, 431 (E.D.Mo.1985); *Burud v. Acme Electric Co., Inc.,* 591 F.Supp. 238, 248, n. 9 (D.Alaska 1984); *Kahnke v. Herter,* 579 F.Supp. 1523, 1528 (D.Minn.1984). Therefore, in accordance with the clear weight of authority, the Court finds that Allison is not entitled to a jury trial on ERISA claims under 29 U.S.C. § 1132(a)(2).

Allison also asserts an action premised upon 29 U.S.C. § 1132(a)(1)(B), which provides:

A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plans.

29 U.S.C. § 1132(a)(1)(B). Here too, most courts have not permitted jury trials for claims brought under this section. See, *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1567 (11th Cir.1987); *Wilson v. Connecticut General Life Ins. Co.,* 670 F.Supp. 52,

53 (D.Me.1987) and cases cited therein; *Hollenbeck*, 605 F.Supp. at 431. Therefore, Allison is not entitled to a jury claim on his claim brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

Accordingly, the defendants' Motion to Strike Allison's jury demand is GRANTED.

*Punitive Damages*

Allison seeks punitive damages in Counts II and III of his Amended Complaint. In addition to various other forms of relief, Allison also seeks compensatory damages in Counts I, II and III of his Amended Complaint. Count I contains allegations that the Trustees willfully violated the terms of the Plan and ERISA, Count II contains allegations that the Plan's Board of Trustees breached their fiduciary duties, and Count III contains an action to recover benefits. Allison does not state which statute or statutes support his claims for compensatory or punitive damages; rather, Allison states only that "[t]his is an action to recover benefits and for breach of fiduciary duty and to enforce other rights arising under [ERISA], 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2), and 1132(a)(3)." (See Amended Complaint, ¶ 1) While the defendants have not addressed Allison's claims for compensatory damages, they have moved to strike Allison's claims for punitive damages on the grounds that punitive damages are not available under any of the three statutory provisions cited.

■ The statute which authorizes a beneficiary to bring an action to either enforce his rights under an employee benefit plan governed by ERISA, or to recover benefits allegedly due him under the terms of his plan, contains nothing to support a private right of action for compensatory or punitive relief. 29 U.S.C. § 1132(a)(1)(B); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985). See also, *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 626 (7th Cir.1987) (punitive damages are not recoverable under 29 U.S.C. § 1132(a)(2)); *Pokratz v. Jones Dairy Farm*, 597 F.Supp. 326 (D.Wis.1984) *aff'd*, 771 F.2d 206 (7th Cir.1985) (relief under 29 U.S.C. § 1109 for a fiduciary's liability for

breach of duty does not include compensatory and punitive damages). As the United States Supreme Court stated in *Russell*, "the entire text of Section 409 persuades us that Congress did not intend that section to authorize any relief except for [enforcement of] the plan itself." *Id.*, construing 29 U.S.C. § 1109.

■ The civil enforcement provisions found in 29 U.S.C. § 1132(a) do not permit the inference that Congress intended to permit other remedies. These provisions "provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Russell*, 473 U.S. at 146, 105 S.Ct. at 3092 (original emphasis). Section 1132(a)(1)(B) provides a plaintiff remedies in an action to recover benefits which include the recovery of accrued benefits, declaratory judgment that plaintiff is entitled to benefits under the provisions of his plan, and an injunction prohibiting the plan administrator from improperly refusing to pay benefits in the future. *Russell*, 473 U.S. at 147–48, 105 S.Ct. at 3092–93, construing 29 U.S.C. § 1132(a)(1)(B). Sections 1132(a)(2) and 1109 provide for the removal of a fiduciary where his refusal to pay contractually authorized benefits is willful and part of a larger systematic breach of fiduciary obligations. *Id.*, construing 29 U.S.C. §§ 1109 and 1132(a)(2). It should also be noted that ERISA authorizes the award of attorney fees in appropriate cases. 29 U.S.C. § 1132(g)(1); *Russell*, 473 U.S. at 148, 105 S.Ct. at 3093. Additionally, prejudgment interest is to be awarded in appropriate actions to recover benefits or redress the breach of fiduciary duty. See *Brink v. DaLesio*, 667 F.2d 420 (4th Cir.1981) (error not to allow prejudgment interest in an action to recover for breach of trust), and *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1219 (8th Cir.), *cert. denied*, 454 U.S. 968, 1084, 102 S.Ct. 512, 641, 70 L.Ed.2d 384, 619 (1981) (construing 29 U.S.C. § 1132(a)(3)(B), prejudgment interest is part of remedial relief to be awarded in an action to recover benefits).

"[W]here a statute expressly provides a particular remedy or remedies, a court

must be chary of leading others into it."
*Id.* (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979)). Therefore, Allison is not entitled to compensatory or punitive damages for his claims under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(2).

■ "The precise question represented in a claim for punitive damages under § 1132(a)(3) is whether Congress intended the phrase 'other appropriate equitable relief' as used in § 1132(a)(3) to include punitive damages." *Kleinhans*, 810 F.2d at 626. Although the United States Supreme Court has not directly addressed the availability of punitive damages under § 1132(a)(3), the majority of the courts that have considered the availability of punitive damages under § 1132(a)(3) have concluded that Congress did not intend punitive damages to be recoverable under this section. *Kleinhans*, 810 F.2d at 626 (citing *Russell*, 473 U.S. 134, 105 S.Ct. 3085, and, *Maxfield v. Central States Health, Welfare & Pension Funds*, 559 F.Supp. 158, 160 (N.D.Ill. 1982); *Powell v. Chesapeake & Potomac Tel. Co.*, 780 F.2d 419 (4th Cir.1985); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir.1981); *Dedeaux v. Pilot Life Ins. Co.*, 770 F.2d 1311 (5th Cir.1985)).

The United States Court of Appeals for the Seventh Circuit has held that the legislative history of ERISA demonstrates that Congress intended to incorporate into ERISA the fiduciary principles developed in the law of trusts, and punitive damages are not generally available under the law of trusts for breach of fiduciary duty. *Kleinhans*, 810 F.2d at 626–27 (citing *Sommers Drug Stores v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1463 (5th Cir.1986), and, *Powell*, 780 F.2d at 424). See also, H.R.Rep. No. 533, 93d Cong., 1st Sess.1973, *reprinted in* 1974 U.S.Code Cong. & Admin. News 4639, 4649, 4651. As the United States Court of Appeals for the Seventh Circuit stated in *Kleinhans v. Lisle Sav. Profit Sharing Trust:*

Because Congress intended the interpretation of ERISA to be guided by princi-

ples developed under the law of trusts, absent express language to the contrary in the statute, we will not interpret ERISA to provide punitive damages for breach of a trustee's fiduciary obligations where such damages are not generally available under the law of trusts. 810 F.2d at 627. Therefore, Allison is not entitled to punitive damages in redress of his claim under 29 U.S.C. § 1132(a)(3).

The same analysis may be utilized to determine whether 29 U.S.C. § 1132(a)(3) provides for an award of compensatory damages. While the United States Supreme Court has expressly reserved ruling on whether extra-contractual damages might be a form of "other appropriate relief" under § 1132(a)(3),[2] the majority of the courts that have addressed this issue have found that extra-contractual damages are unavailable under this section. See *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir.1988) ("We conclude, as have the Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Circuits, that extra-contractual damages are unavailable under § 1132(a)(3)."), and cases cited therein. Furthermore, the Seventh Circuit has held, in construing § 1132(a)(3) that:

"There is a stark absence—in the statute itself and in its legislative history—of any reference to an intention to authorize the recovery of extra-contractual damages."

*Kleinhans*, 810 F.2d at 626 (quoting *Russell*, 105 S.Ct. at 3093). Thus, as the Ninth Circuit has stated, "it appears that Congress used the word 'equitable' [in § 1132(a)(3)] to mean what it usually means—injunctive or declaratory relief." *Drinkwater*, 846 F.2d at 825 (quoting *Sokol v. Bernstein*, 803 F.2d 532, 538 (9th Cir.1986)).

■ Based on the foregoing analysis, Allison is not entitled to punitive or compensatory damages for any of the claims in his Amended Complaint. While the defendants have moved to strike the claims for punitive damages, the defendants have not addressed Allison's requests for compensa-

---

2. *Russell*, 473 U.S. at 157, 105 S.Ct. at 3098

(Brennan, J., concurring).

tory damages. Rule 12(f) provides, in relevant part, that:

> [U]pon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f). Accordingly, the Court, *sua sponte*, hereby ORDERS that the plaintiff's claims for compensatory damages be STRICKEN from the Amended Complaint. Additionally, the defendants' Motion to Strike the plaintiff's requests for punitive damages is GRANTED, and the Court hereby ORDERS the plaintiff's requests for punitive damages STRICKEN from the Amended Complaint.

*Rule 11 Sanctions*

■ By his Amended Complaint, filed October 30, 1989, Allison requests compensatory and punitive damages under ERISA. While Allison cites no authority for his request for compensatory damages, he argues that punitive damages are available under the provisions of ERISA for willful violation of the provisions of a pension plan. In support of his position regarding punitive damages, Allison cites *Haytcher v. ABS Industries, Inc.*, 7 E.B.C. 2159 (N.D. Ohio 1986), a case which was specifically brought for breach of a collective bargaining agreement, and which was never officially reported. Additionally, Allison fails to provide this Court and opposing counsel with a copy of the *Haytcher* decision, in accordance with Local Rule 38 of the United States District Court for the Northern District of Indiana, which provides:

> If a party relies upon a legal decision not published in the Federal Supplement, Federal Rules Decision, Federal Reporter, Federal Reporter 2d, Supreme Court Reporter, Bankruptcy Reporter, Northeast Reporter, or Northeast Reporter 2d, then the party shall furnish the Court with a copy of the relied-upon decision.

Insofar as *Haytcher v. ABS Industries, Inc.* supports the proposition that a jury trial must be provided in actions seeking the recovery of money damages for breach of a collective bargaining agreement, pursuant to 29 U.S.C. § 185, and Allison has

not pled that statutory provision, Allison's reliance on *Haytcher* as persuasive authority for punitive damages under the various counts of his Amended Complaint is misplaced.

Additionally, Allison relies upon the case of *Bittner v. Sadoff and Rudoy Industries*, 490 F.Supp. 534 (E.D.Wis.1980), in support of his claim for punitive damages. Allison ignores the fact that the holding in this case has clearly been superceded by the decision of the United States Supreme Court in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

While it does not appear that Allison's claims for compensatory and punitive damages or demand for jury trial was made for any improper purpose or in bad faith, it does appear that counsel for Allison neglected to make reasonable inquiry into the applicable law of this Circuit before making these claims for damages and jury demand. Rule 11 provides that a lawyer's or party's signature on any paper filed in district court,

> Constitutes a certificate by the signer that the signer has read the pleading, motions, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well-grounded in fact and is warranted by the existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not imposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. This has both a subjective and an objective component. *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 931 (7th Cir.1989). "A paper 'interposed for any improper purpose' is sanctionable whether or not it is supported by the facts and the law, and no matter how careful the pre-filing investigation." *Mars Steel*, 880 F.2d at 931–32. The objective component is that a paper filed in the best faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make "reasonable inquiry"

beforehand. *Mars Steel*, 880 F.2d at 932. "An empty head but a pure heart is no defense. The Rule requires counsel to read and consider before litigating." *Mars Steel*, 880 F.2d at 932 (citing *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986)). Counsel may not drop papers into the hopper and insist that the court or opposing counsel undertake a bothersome factual and legal investigation. *Mars Steel*, 880 F.2d at 932.

Allison's requests for compensatory and punitive damages and his demand for a trial by jury, as well as Allison's Reply and Memorandum of Law in Opposition to Defendants' Motion to Strike, filed November 27, 1989, are not well-grounded in fact or in existing law. Allison's response to defendants' motion to strike his demand for a jury trial indicates that he completely ignores the cases cited in support of the motion to strike. Allison merely urges this Court to analogize his cause of action under various provisions of ERISA to an action for a breach of a collective bargaining agreement, and cites cases which support no proposition other than that a jury trial must be provided where a plaintiff seeks the recovery of money damages for breach of a collective bargaining agreement.

In response to the defendants' motion to strike his claim for punitive damages, Allison cites no cases which support the proposition that punitive damages are available in either an action for breach of fiduciary duty or in an action to recover benefits allegedly due. Furthermore, Allison attempts to distinguish the recent United States Supreme Court opinion in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), with a United States District Court opinion which pre-dates the *Russell* decision by five years. See, *Bittner v. Sadoff and Rudoy Industries*, 490 F.Supp. 534 (E.D.Wis.1980). Allison ignores the controlling case law and instead argues that "both the *Haytcher* decision and the ruling in the *Bittner* case addressed factual situations which were analogous and similar to the case at issue." (See plaintiff's Reply and Memorandum of Law in Opposition to Defendants' Motion to Strike, filed November 27, 1989, p. 5).

It is a fundamental principle of law that there is no reason to rely upon analogy when controlling case law specifically addresses the issue. Litigants may not pretend the law favors their view and impose on the court or their adversaries the burden of research to uncover the basic rule. *Mars Steel*, 880 F.2d at 938 (citing *In re: Central Ice Cream Co.*, 836 F.2d 1068, 1073 (7th Cir.1987)). Additionally, pretending that potentially dispositive authority against one's position does not exist is as unprofessional as it is pointless. *Mars Steel*, 880 F.2d at 939 (citing *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1198 (7th Cir.1987)). Furthermore, it constitutes a violation of Rule 11. While this Court takes no joy in awarding sanctions under Rule 11, the Court *must* do so when it finds a violation. Accordingly, as sanctions, Allison is ordered to pay the defendants' reasonable attorneys' fees and costs incurred in filing the motion to strike his demand for a jury trial and request for punitive damages, and in filing the defendants' reply brief in support thereof.

*Motion For Summary Judgment on Counterclaim*

The defendant-counterplaintiff, Trust Fund, has filed a Counterclaim against the plaintiff-counterdefendant, Allison. (See Answer to Amended Complaint for Declaratory Judgment and Counterclaim, hereinafter referred to as "Answer" and "Counterclaim", filed October 30, 1989, by the defendants.) In support of its Counterclaim, the Trust Fund alleges that the Board of Trustees initially suspended Allison's early retirement benefits after one of the trustees, William Anderson, informed the Administrative Manager of the Plan, defendant, Bushmaker, that Allison may have been receiving benefits while engaged in "disqualifying employment". (See Counterclaim, p. 14, § 13; and Affidavit of Larry W. Bushmaker, hereinafter referred to as "Bushmaker Affidavit", filed April 19, 1990, p. 5, ¶ 10.) The Trust Fund further alleges that Bushmaker, suspended Allison's benefits after an inquiry led to the

determination that Allison's work as General Manager of Taylith, Inc. constitutes "disqualifying employment". (See Counterclaim, p. 14, ¶ 13; and Bushmaker Affidavit, p. 6, ¶ 12.)

The Appeal Review Panel of the Midwest Operating Engineers Pension Trust Fund (hereinafter referred to as "Appeal Panel") rendered its decision upholding the suspension of Allison's benefits after Allison appealed Bushmaker's decision and a hearing was conducted, at which Allison and his attorney were present and gave evidence. (See Counterclaim, pp. 14–15, ¶ 14.) Allison requested that this decision be reconsidered, but chose not to appear or present additional evidence at the reconsideration hearing. (See Counterclaim, p. 15, ¶¶ 15–16.) As a result, the Appeal Panel affirmed its original decision, thus finalizing the suspension of Allison's benefits.

The Trust Fund contends that there is no issue of material fact as to whether the Appeal Panel's decision to suspend Allison's benefits was arbitrary or capricious, and has moved for the entry of summary judgment on that issue as a matter of law. Aside from questioning one date and some of the wording of the Appeal Panel's decision, Allison agrees that the facts which the Appeal Panel relied upon to render its decision are accurate. (See Deposition of Donald G. Allison, dated February 7, 1990, hereinafter referred to as "Allison Deposition", pp. 37–43.) Allison contends, however, that there are seven issues of material fact and opposes summary judgment on the Counterclaim.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Summary Judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988); *Beard v. Whitley County R.E. M.C.*, 840 F.2d 405, 409 (7th Cir.1988); *Roman v. U.S. Postal Service*, 821 F.2d 382, 385 (7th Cir.1987); *McGraw–Edison v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir.1986); *Federal Deposit Insurance Corp. v. Meyer*, 781 F.2d 1260,

1267 (7th Cir.1986). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts which might effect the outcome of the suit under governing law will properly preclude the entry of summary judgment'." *Walter*, 840 F.2d at 434 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 211 (1986)).

The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Donald v. Polk County*, 836 F.2d 376, (7th Cir.1988); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); *Backes v. Valspar Corp.*, 783 F.2d 77, 79 (7th Cir.1986). To preclude summary judgment, a non-moving party must show a material issue of fact. "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard*, 840 F.2d at 410. Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. In this situation, "there can be no 'genuine issue as to any material fact', since a complete failure of proof concerning an essential element of a non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986). See also: *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511, 91 L.Ed.2d at 212.

 The Trust Fund argues that this court should uphold the decision of the Appeal Panel to suspend Allison's benefits unless Allison demonstrates that the Appeal Panel's decision was arbitrary or capricious. A decision to deny benefits, which is challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Bali v. Blue Cross and Blue Shield Ass'n.*, 873 F.2d 1043, 1047 (7th Cir.1989). Where a benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan, the decision to deny the benefits is to be reviewed under the "arbitrary and capricious" standard of review. *Bali*, 873 F.2d at 1047–48.

█ In the instant case, the Board of Trustees has discretionary authority to determine all questions arising in the administration, interpretation and application of the plan, and to construe the language and meaning of all rules and regulations pertaining thereto. The Agreement and Declaration of Trust which establishes the Trust Fund provides, in relevant part, that:

> ... [T]he trustees, as named fiduciaries, are authorized: ... (b) to determine all questions arising in the administration, interpretation and application of the pension plan, including questions of eligibility of employees, the status of the participants and their beneficiaries, and any other person thereunder. Unless otherwise in this agreement and declaration of trust provided, determination made by the trustees, as the "named fiduciaries", in the determination, interpretation and application of the pension plan shall be binding on all persons.

(See Agreement and Declaration of Trust establishing the Midwest Operating Engineers Pension Trust Fund, Part IV, Article 1, Section 1, as provided in Bushmaker Affidavit, p. 2, ¶ 3.) The Agreement and Declaration of Trust also provides, in relevant part, that:

> In the administration of the pension plan, the trustees, consistent with the purposes of the trust fund shall have power and authority to: ... (e) to decide all questions or controversies arising in any manner or between any parties or persons in connection with the trust fund or the operation thereof, whether as to any claim for benefits made by any employees, or any person, or whether as to the

construction of the language or meaning of the rules and regulations adopted by the trustees or established by this instrument, or as to any writing, decisions, instrument, or account or otherwise, and the decisions of the trustees, if made in good faith, shall be binding upon all persons dealing with the trust fund or claiming any benefits thereunder.

(See Agreement and Declaration of Trust establishing the Midwest Operating Engineers Pension Trust Fund, Part IV, Article 3, Section 1, as provided in Bushmaker Affidavit, p. 2, ¶ 4.) Therefore, this Court must apply the arbitrary and capricious standard in reviewing the Appeal Panel's decision to suspend Allison's benefits.

█ A determination as to whether a denial of pension benefits by a pension fund trustee is arbitrary or capricious must be made in light of the language of the Plan. *Pokratz v. Jones Dairy Farm* (*"Pokratz I"*), 597 F.Supp. 326, 330 (W.D. Wis.1984), *aff'd* in part, 771 F.2d 206 (7th Cir.1985). "A decision is arbitrary or capricious when the decisionmaker 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence ... or is so implausible that it could not be ascribed to a difference in view or the product of ... expertise'." *Pokratz v. Jones Dairy Farm* (*"Pokratz II"*), 771 F.2d 206, 209 (7th Cir.1985) (quoting *Motor Vehicle Manufacturers Ass'n. v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983)). Under the arbitrary or capricious standard, any questions of judgment are left to the administrator of the plan. *Pokratz II*, 771 F.2d at 209 (citing *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974); cf. *Center for Auto Safety v. Peck*, 751 F.2d 1336, 1342–43 (D.C.Cir.1985)). Before the district court overturns a decision as arbitrary or capricious, the district court "must be very confident that the decisionmaker overlooked something important or seriously erred in

appreciating the significance of the evidence." *Pokratz II,* 771 F.2d at 209.

 Allison has failed to demonstrate that either Bushmaker or the Appeal Panel, in reaching a determination that he was working in "disqualifying employment" and that his benefits should be suspended, relied on factors which Congress had intended were not to be considered. The Midwest Operating Engineers Pension Plan defines "disqualifying employment" for those who seek early retirement benefits before normal retirement age, as

> ... [E]mployment or self-employment of the type that is described in the following sub-paragraphs:
>
> (A) In the construction industry or any other industry in which employees were employed as operating engineers and accruing benefits under the Plan at the time pension benefits commenced or would have commenced, if the employee had not remained in or returned to such work; or
>
> (B) In the same "trade or craft" in which the employee was employed at any time while covered by the Plan or supervisory activities relating to such trade or craft. Trade or craft extends to any job or occupation using the same skill or skills; and
>
> (C) The geographic area covered by the Plan includes the State of the United States or a province of Canada in which employer contributions have been made, or have been required to be made to the Trust Fund, on behalf of the employee, within the last five (5) years and any other area covered by the Plan when an employee's pension began or, but for suspension under this section, would have begun.
>
> The geographic area covered by the MIDWEST OPERATING ENGINEERS PENSION PLAN shall also include any area covered by a plan which, under a Reciprocal Agreement is required to forward contributions to the Trustees or is required to provide pro rata pension credit for employees under the terms of the Plan.

(See Midwest Operating Engineers Pension Plan, Article XI, Section 6, as provided in the decision of the Appeal Review Panel in the matter of Donald G. Allison, appended to defendant-counterplaintiff's Statement of Undisputed Material Facts, Proposed Conclusions of Law, and Proposed Summary Judgment, filed April 16, 1990.) While a pension plan participant has a guaranteed right under ERISA to receive his non-forfeitable portion of vested benefits, pension plans have a legitimate right to require that, prior to payment of retirement benefits, the participant cease active employment in the same trade or craft in the geographic area of the Plan. 29 U.S.C. § 1053(a)(3)(B); *Thompson v. I.A.M. National Pension Fund,* 616 F.2d 343, 346 (7th Cir.1980). Thus, while a major purpose of ERISA is to guarantee that employees can retire and obtain retirement benefits from their pension funds, "[t]here is no indication that this guarantee was for the payment of retirement benefits to a retiree working in a management capacity in the same industry and who is associated with the same craft in the same area and working for a contributing employer." *Thompson v. Asbestos Workers Local No. 53 Pen. Fund,* 716 F.2d 340, 342–43 (5th Cir.1983), construing 29 U.S.C. § 1053(a)(3)(B).

Allison has also failed to demonstrate that either Bushmaker or the Appeal Panel failed to consider some important aspect of his situation, offered an explanation for the decision to suspend his benefits that runs counter to the evidence, or reached a decision which was so implausible based on the evidence that it could not be ascribed to a difference in view. To determine whether Allison was in fact engaged in "disqualifying employment", Bushmaker initially notified Allison on June 15, 1988 that he might be working in "disqualifying employment" and requested that Allison submit a letter describing the type of work he was doing, the name of the company, and the starting date of his employment. (See Exhibit A, appended to defendant-counterplaintiff's Statement of Undisputed Material Facts, Proposed Conclusions of Law, and Proposed Summary Judgment, filed April 16,

1990.) Counsel for Allison responded by letter dated June 23, 1988, that Allison "is the general manager for Taylith, Inc., and as such is responsible for the day-to-day operations of that business. Mr. Allison is not an operator nor is he responsible for the direct supervision of any operators." (See Exhibit B appended to defendant-counterplaintiff's Statement of Undisputed Material Facts, Proposed Conclusions of Law, and Proposed Summary Judgment, filed April 16, 1990.) As a result, Allison's file was submitted to the Board of Trustees to determine whether the work described by his attorney was considered "disqualifying employment" within the Plan provisions. (See Exhibit C appended to defendant-counterplaintiff's Statement of Undisputed Material Facts, Proposed Conclusions of Law, and Proposed Summary Judgment, filed April 16, 1990.)

Allison was then advised by letter dated July 28, 1988 that it had been determined, based on his file and information submitted by his attorney, that he was working in "disqualifying employment" as those terms were defined in Article XI, Section 6(a) of the Pension Plan. (See Exhibit D, appended to defendant-counterplaintiff's Statement of Undisputed Material Facts, Proposed Conclusions of Law, and Proposed Summary Judgment, filed April 16, 1990, pp. 3–4, ¶ 7.) Allison appealed that decision, and on September 8, 1988, the Appeal Panel held a hearing to determine whether or not Allison was working in "disqualifying employment".

At this hearing, Bushmaker and Allison testified, and Allison's attorney was afforded an opportunity to present evidence. Prior to the hearing, Allison was advised that he and his attorney had a right to review all documents, information, and any material relied upon by the Administrative Manager (Bushmaker) in suspending his benefits, including a review of the pertinent documents in his file, the Pension Plan, and the Agreement and Declaration of Trust. (See Exhibit D, pp. 4–5, ¶ 9, appended to defendant-counterplaintiff's Statement of Undisputed Material Facts, Proposed Conclusions of Law, and Proposed Summary Judgment, filed April 16, 1990.)

After a careful review of the record in this case, the Appeal Panel made the following findings of fact regarding Allison's work while in "covered" employment:

(1) He worked as a heavy machine operator or welder mechanic for employers in the construction industry and steel service industry since 1967.

(2) He last worked as a mechanic/welder for Furnace Services, Inc. which provided services to the steel mills.

(3) He worked for Furnace Services, Inc. during various periods commencing in the 1970's. His last employment with Furnace Services, Inc. ended in June, 1983.

(4) He advised that during that period he worked primarily as a welder/mechanic although on occasion operated equipment.

(5) During that period of employment he repaired and maintained equipment such as grade-alls, pit machines, bobcats, and similar types of equipment.

(6) Prior to that time, he also worked for other employers who provided various services to the steel mills working as a welder/mechanic, or a heavy equipment operator.

(See Exhibit D, pp. 7–8, appended to defendant-counterplaintiff's Statement of Undisputed Material Facts, Proposed Conclusions of Law, and Proposed Summary Judgment, filed April 16, 1990.) With respect to Allison's work at Taylith, Inc., the Appeal Panel made the following findings of fact:

(1) Allison confirmed that since March 1, 1988, he has been the general manager of Taylith, Inc. and as such is responsible for the day-to-day operations of that business.

(2) He advised that he buys and sells equipment and leases equipment to the steel mills.

(3) He further confirmed that Taylith, Inc., among other things, employs mechanics and welders who repair and maintain that equipment and also has fabrication shops.

(4) He also advised that up to April, 1988, that company also employed individuals who operated equipment.

(5) He confirmed that he was responsible for all operations of the company, including the repair and maintenance of equipment leased to the steel mills.

(6) He stated that among his responsibilities was the supervision of work in progress, purchasing orders, and parts and materials for equipment.

(7) He further advised that while equipment maintained and repaired by Taylith was generally smaller than that on which he worked as a welder/mechanic while working in covered employment, other equipment was similar such as bobcats.

(8) He explained his authority to hirer and fire welders and/or mechanics by saying that if he saw something wrong, he would "send him down the road".

(Exhibit D, pp. 6–7, appended to defendant-counterplaintiff's Statement of Undisputed Material Facts, Proposed Conclusions of Law, and Proposed Summary Judgment, filed April 16, 1990.)

The Appeal Panel concluded, based on these facts, first, that Allison was currently working in the same industry in which he had previously worked; second, that Allison was working in the same "trade or craft" as a supervisor; and third, that his work was also being performed in the same geographic area covered by the Pension Plan in which employer contributions were made on his behalf to the Pension Trust Fund. (See Exhibit D, appended to defendant-counterplaintiff's Statement of Undisputed Material Facts, Proposed Conclusions of Law, and Proposed Summary Judgment, filed April 16, 1990.) As a result, the Appeal Panel determined that Allison's current employment at Taylith, Inc. came within the definition of "disqualifying employment" as set forth in the Plan and applicable federal regulations. (See Exhibit D, p. 9, appended to defendant-counterplaintiff's Statement of Undisputed Material Facts, Proposed Conclusions of Law, and Proposed Summary Judgment, filed April 16, 1990.)

The Midwest Operating Engineers Pension Plan provides that the monthly benefits shall be suspended for any month in which an employee, before the normal retirement age, is employed in disqualifying employment. (See, *Midwest Operating Engineers Pension Plan*, Article XI, Section 6, appended to defendant-counterplaintiff's Statement of Undisputed Material Facts, Proposed Conclusions of Law, and Proposed Summary Judgment, filed April 16, 1990.) The Plan also provides for the discretionary authority of the Trustees to interpret and construe terms of the Plan such as "disqualifying employment". With respect to the factual basis relied upon by Bushmaker and the Appeal Panel, Allison disputes only one of the dates given in the decision, the characterization of "facts" as "facts", and "some of the wording." (See Allison Deposition, pp. 37–43) Therefore, the factual basis for the decision cannot be considered arbitrary or capricious. Additionally, while Allison maintains that he is not and was not engaged in "disqualifying employment", Allison has failed to demonstrate that the Appeal Panel's determination that he was engaged in "disqualifying employment" was implausible in light of the evidence or runs counter to the evidence. The determination that Allison was engaged in "disqualifying employment" was a matter of judgment on the facts, and questions of judgment are left to the administrator of the Plan. *Pokratz II*, 771 F.2d at 209 (citations omitted).

Allison maintains, nonetheless, that there are seven issues of material fact remaining which preclude summary judgment on the counterclaim. This Court notes, however, that the alleged issues of material fact raised by Allison in his response to the motion for summary judgment on the Counterclaim, filed April 23, 1990, are directed primarily at whether the Board of Trustees were motivated by desire to retaliate against Allison, or punish Allison for his actions in refusing to recognize Local 150's efforts to organize Taylith, Inc.'s employees. Additionally, Allison contends that there are issues regarding whether his benefits were suspended at the direction of the Union President, Dugan, who is also a

member of the Board of Trustees, whether the Trustees' acted in bad faith when they suspended his benefits, whether the Trustees were acting for the sole benefit of the participants when they suspended his benefits, whether the hearing which he received was actually a fair hearing, and whether in fact he had actually been engaged in "disqualifying employment".

■ This Court notes that the defendants conceded that Allison has raised issues of fact which arguably preclude summary judgment on *his* claims, however, these issues are, for the most part, irrelevant to the Counterclaim. This Court also notes, however, that while the motivations of plan administrators and fiduciaries operating under a possible or actual conflict of interest are irrelevant under a *de novo* standard of review, these motivations are relevant under the arbitrary and capricious standard. If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, the arbitrary and capricious standard applies, and under that standard, conflict of interest must be weighed as a factor in determining whether there is an abuse of discretion which rendered the ultimate decision arbitrary or capricious. *Firestone*, 489 U.S. at ——, 109 S.Ct. at 956.

In the instant case, Allison has failed to demonstrate that the conflict of interest, which he alleges resulted from his refusal to recognize Local 150 as the bargaining representative of the Taylith, Inc. employees, rendered the decision of Bushmaker and the Appeal Panel arbitrary or capricious. The Administrative Manager of the Plan, Bushmaker, affirms that he was informed by one of the Pension Fund Trustees, William Anderson, that Anderson believed Allison was in fact working in disqualifying employment, and that Anderson recommended that Allison's pension benefits be suspended as a consequence. (See Bushmaker Affidavit, p. 5, ¶ 10.) Bushmaker also affirmed, however, that his determination that Allison was working in disqualifying employment was initially based on information received from Allison's counsel. *Id.* This Court notes that

Allison appears to be arguing that the determination that he was working in disqualifying employment and the decision to suspend his benefits was arbitrary and capricious only because his benefits, and perhaps not those of others in his situation, were suspended. While defendant's concede that William Anderson derived great pleasure from being able to turn Allison in, it would have been a breach of Anderson's fiduciary duty to the Trust fund and those participants who were not engaged in "disqualifying employment", for Anderson to have overlooked the fact that Allison may have been engaged in "disqualifying employment". Thus, the fact that a Union member who is also a Trustee turned Allison in is not persuasive evidence that the ultimate decision to suspend Allison's benefits was arbitrary or capricious.

Finally, Allison has failed to demonstrate that either Bushmaker or the Appeal Panel overlooked something important or seriously erred in appreciating the significance of the evidence in his case. The record in this case does, however, demonstrate that Bushmaker's decision, which was affirmed by the Appeal Panel, was based on a good faith, discretionary, interpretation of the Plan provisions regarding "disqualifying employment" and the suspension of benefits for an employee in early retirement, until such time as the employee ceases to work in "disqualifying employment". Accordingly, as a matter of law, the defendant-counterplaintiff, Trust Fund, is entitled to summary judgment on its Counterclaim.

CONCLUSION

Based on the foregoing, the defendants' Motion to Strike Allison's jury demand and punitive damages claims from the Amended Complaint for declaratory judgment is GRANTED. Additionally, this Court, *sua sponte*, ORDERS Allison's demands for compensatory damages STRICKEN from the Amended Complaint. Allison is ORDERED to pay the defendants' reasonable attorneys' fees and costs incurred in filing the Motion to Strike, and in filing the defendants' Memorandum in reply and in support of their Motion to Strike, filed Decem-

ber 7, 1989. The defendants are OR-DERED to file with this Court within ten (10) days from the date of the entry of this Order, affidavits and relevant billing statements reflecting the amount of reasonable attorneys fees and costs incurred in filing the Motion to Strike and the Memorandum in support thereof. Finally, the defendant-counterplaintiff's Motion for Summary Judgment on the Counterclaim is GRANT-ED, and Allison is ORDERED to repay $1,865.10 to the Trust Fund. The issue of whether the defendant-counterplaintiff is entitled to attorneys' fees and costs on the counterclaim is HELD UNDER ADVISE-MENT. The parties are GRANTED ten (10) days within which to file briefs on this issue. Late filings will not be accepted.